

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

| | | | |
|---|---|---|---|
| Sean R. Delaney<br>Assistant United States Attorney<br>Sean.Delaney@usdoj.gov | Mailing Address:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | Office Location:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | DIRECT: 410-209-4913<br>MAIN: 410-209-4800<br>FAX: 410-962-3091 |

December 1, 2022

Andrew C. White, Esq.
Patrick R. Seidel, Esq.
Silverman, Thompson, Slutkin & White
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202

Re:   United States v. Adam Lane Chaudry
      Criminal No. RDB-22-341

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Adam Lane Chaudry (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **If this offer has not been accepted by December 5, 2022, it will be deemed withdrawn.** The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.   The Defendant agrees to plead guilty to Counts One and Two of the Indictment, which charges the Defendant with fraud in connection with obtaining confidential phone records of a covered entity, 18 U.S.C. § 1039. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense(s)

2.   The elements of fraud in connection with obtaining confidential phone records of a covered entity to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the time alleged in the Indictment, in the District of Maryland:

   a.   The Defendant knowingly and intentionally obtained or attempted to obtain confidential phone records of a telecommunications carrier;

   b.   The Defendant obtained or attempted to obtain the records in interstate commerce.

Rev. August 2018

c. The Defendant obtained or attempted to obtain the records by making false or fraudulent statements or representations to an employee of a covered entity.

d. The Defendant committed the crime knowing that such information may be used in furtherance of and with the intent to commit Stalking, in violation of 18 U.S.C. § 2261A.

## Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Counts | Statutes | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 and 2 | 18 U.S.C. § 1039; 18 U.S.C. 2261A | N/A | 15 years | 3 years | $250,000 or twice gross gain/loss | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to

collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph

Rev. August 2018

3



below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

    5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

    6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that:

    a. The applicable base offense level is 9, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2H3.1(a)(1).

    b. The offense level is increased an additional 3 levels, pursuant to U.S.S.G. § 2H3.1(b)(1)(A), because the defendant was convicted under 18 U.S.C. § 1039(e).

Rev. August 2018

4



   c. The offense level is increased an additional 2 levels, pursuant to U.S.S.G. § 3B1.3 because the defendant abused a position of public trust, and used a special skill in a manner that significantly facilitated the commission and concealment of the offense.

   d. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

   e. **Accordingly, the resulting anticipated offense level for fraud in connection with obtaining confidential phone records of a covered entity, after reduction for acceptance of responsibility, is 12.**

  7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Waiver of Appeal</u>

  9. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including

the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Restitution

10. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding

forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

<u>Defendant's Conduct Prior to Sentencing and Breach</u>

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).



## Court Not a Party

18.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

*Sean R. Delaney*
Sean R. Delaney
Assistant United States Attorney
Sarah R. David
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/2/2022
Date

Adam Lane Chaudry

Rev. August 2018

We are the Defendant's attorneys. We have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises us that the Defendant understands and accepts its terms. To our knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/2/22
Date

Andrew C. White, Esq.
Patrick R. Seidel, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant Adam Lane Chaudry ("Chaudry") was a resident of Baltimore, Maryland. From in or about June 2009 to June 18, 2021, he worked as an Assistant State's Attorney ("ASA") in the Baltimore City State's Attorney's Office ("BSAO"). Beginning in or about September 2015, he worked in the BSAO's Homicide Division. When he began work as an ASA, he signed an oath stating as follows:

I, ADAM LANE CHAUDRY, DO SWEAR THAT I WILL SUPPORT THE CONSTITUTION OF THE UNITED STATES, AND THAT I WILL BE FAITHFUL AND BEAR TRUE ALLEGIANCE TO THE STATE OF MARYLAND, AND SUPPORT THE CONSTITUTION AND LAWS THEREOF; AND THAT I WILL TO THE BEST OF MY SKILL AND JUDGMENT, DILIGENTLY AND FAITHFULLY, WITHOUT PARTIALITY OR PREJUDICE, EXECUTE THE OFFICE OF

**ASSISTANT STATE'S ATTORNEY**
**FOR BALTIMORE CITY**

ACCORDING TO THE CONSTITUTION AND LAWS OF THIS STATE.

The BSAO maintains an office policy manual for all ASAs. The manual contains a section titled "Personal Conduct" that states, in relevant part, "When an employee's personal relationship(s) might give rise to an appearance of impropriety or conflict – of – interest, that employee must immediately contact the Chief of Administration and the appropriate Deputy State's Attorney." It further states, "No employee may engage in any activity, paid or unpaid, that conflicts with the employee's duties in the Office of the State's Attorney." Under a Section titled "Notification of Arrest," the manual states, "Whenever a family member or close personal friend of any employee of the Office is arrested and/or is being prosecuted in the State of Maryland, the employee must notify the respective Deputy State's Attorney and the Chief of Administration."

ASAs issue grand jury subpoenas for cases under investigation. The subpoenas state, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or

Rev. August 2018

10

objects. . .The information sought in the subpoena is relevant and material to a legitimate law enforcement inquiry."

Grand jury subpoenas are signed by the ASA investigating the matter. The subpoenas are then brought to the empaneled grand jury, and the subpoena is signed by the Grand Jury Foreperson before it is sent out by a member of the BSAO. For cases that have been charged, ASAs issue trial subpoenas, which command appearance in Baltimore City Circuit Court. These subpoenas contain a space for the case number and the caption of the filed case. Trial subpoenas contain a photocopied signature of the Clerk of Baltimore City Circuit Court. During the COVID-19 pandemic, ASAs regularly utilized these subpoenas in place of grand jury subpoenas.

Chaudry maintained a romantic relationship with Victim #1 beginning in or about May 2005 through in or about January 2018, when the relationship ended. Chaudry maintained a romantic relationship with Victim #2 from in or about August 2017 through in or about September 2020, when the relationship ended. Victim Numbers 3, 4, and 5 were long-time friends of Victim #1 who also performed volunteer work with Victim #1. At no point in time were any of Victims 1, 2, 3, 4, or 5 a witness or target of any criminal investigation or prosecution by the BSAO.

Covered Entity #1 was a telecommunications carrier with a global legal demand center located in North Palm Beach, Florida. Covered Entity #2 was a telecommunications carrier located in Bedminster, New Jersey.

On or about January 3, 2019, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #1 in Florida. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **any and all subscriber information, billing information, and toll records (to include incoming and outgoing calls) from October 28, 2018 through January 1, 2019 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #1. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, the name of the Grand Jury Foreperson, and the signature of the Clerk of Baltimore City Circuit Court.

On or about January 23, 2019, Covered Entity #1 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone

On or about January 29, 2019, and February 22, 2019, Chaudry caused to be issued additional grand jury subpoenas faxed from Maryland to Covered Entity #1 in Florida seeking telephone records for Victim #1 for January 1, 2019 through January 29, 2019, and January 29, 2019 through February 22, 2019.

On or about February 5, 2019, and March 5, 2019, Covered Entity #1 electronically produced records pursuant to the above-referenced subpoenas, which Chaudry accessed via an internet portal using his cell phone.

On or about February 22, 2019, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #2 in New Jersey. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **any and all subscriber information, billing information, and toll records (to include incoming and outgoing calls) from December 1, 2018 through February 22, 2019 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #2. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, and the signature of the Grand Jury Foreperson.

On or about March 7, 2019, Covered Entity #2 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone.

On or about March 4, 2020, Chaudry sent a lengthy email to Victim #1 expressing a desire to get back together again. The email also stated, in relevant part, "Seeing your postings with [Victim #4] and recognizing that you are probably dating has already broken me and crushed my spirit . . . We need to meet though & I would prefer to do this in person."

Victim #1 responded the same day, stating, in relevant part, "It has been over a year now and I need you to move on. I was hoping by ignoring the texts, calls, and flowers, you would understand how I feel but now I will make it very clear . . . Please do not send me any more flowers or anything else, and please do not send anything to my job. It makes me uncomfortable as I am no longer your girlfriend . . . It is too much and it needs to stop . . . There is no future for us . . . Please do not stop by my house or try to 'run' into me anywhere else. I will not answer the door as there is nothing more to discuss . . . If you persist any further, I will look into other options."

Chaudry responded the same day with another email ending the email, "Every response you have ever given me has been out of anger & frustration when I asked you about [Victim #4]. Just level with me whether you are dating him. Yes or No."

On or about March 5, 2019, and March 12, 2019, Chaudry caused to be issued additional grand jury subpoenas faxed from Maryland to Covered Entity #1 in Florida seeking telephone records for Victim #1 for February 1, 2019, through March 5, 2019, and March 5, 2019, through March 12, 2019.

On or about March 14, 2019 and March 25, 2019, Covered Entity #1 electronically produced records pursuant to the above-referenced subpoenas, which Chaudry subsequently accessed via an internet portal using his cell phone.



On or about March 12, 2019, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #2 in New Jersey. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **any and all subscriber information, billing information, and toll records (to include incoming and outgoing calls) from November 1, 2018 through March 12, 2019 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #3. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, the signature of the Grand Jury Foreperson, and the signature of the Clerk of Baltimore City Circuit Court.

On or about March 25, 2019, Covered Entity #2 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone.

On or about March 20, 2019, Chaudry caused to be issued an additional grand jury subpoena faxed from Maryland to Covered Entity #2 in New Jersey seeking telephone records for Victim #3 for February 19, 2019, through March 20, 2019.

On or about March 29, 2019, Covered Entity #2 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone.

On or about March 22, 2019, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #2 in New Jersey. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **any and all subscriber information, billing information, and toll records (to include incoming and outgoing calls) from October 1, 2018 through March 20, 2019 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #4. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, the signature of the Grand Jury Foreperson, and the signature of the Clerk of Baltimore City Circuit Court.

On or about April 3, 2019, Covered Entity #2 electronically produced records pursuant to the above-referenced subpoena. On or about April 3, 2019, Chaudry accessed those records via an internet portal and replied to the message with the following, via electronic mail, "Ms. XXXXXXX, Good afternoon. I am in possession of the Verizon records, but I do not see the records reflecting all incoming & outgoing calls in the attachments located in the zip file as requested in the In Re GJ subpoena. If you advise as to if the same were sent, I would be most

appreciative. Feel free to contact me via e-mail: xxxxxxxx@xxxxxxxxxx.org / work: xxx.xxx.xxxx / or cell # xxx.xxx.xxxx. Thank you again for your assistance. – ASA Adam Lane Chaudry."

On or about March 25, 2019, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #1 in Florida. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **any and all subscriber information, billing information, and toll records (to include incoming and outgoing calls) from March 20, 2019 through March 25, 2019 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #1. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, the name of the Grand Jury Foreperson, and the signature of the Clerk of Baltimore City Circuit Court.

On or about April 2, 2019, Covered Entity #1 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone.

On or about March 26, 2019, an investigator at the BSAO provided Chaudry information Chaudry had previously requested including Victim #1's home address, Motor Vehicle Administration ("MVA") information, and Victim #1's driver's license photograph.

On or about March 26, 2019, Chaudry contacted a hotel about Victims #1 and #4 using his BSAO email address. The hotel appeared in Victim #1's phone records. The email requested: "Per our conversation, I have taken the liberty of scanning & attaching with this correspondence the MVA digital image(s)." Chaudry received a response from the hotel's General Manager stating "Hello Mr. AChaudry [sic], Upon review of the three names supplied, I was only able to find stays for [Victim #1] from October 1, 2018 through March 22, 2019. Those dates are as follows. Check-In: 12/29/18 Checkout: 12/30/18 Check-In: 01/19/19 Checkout: 01/20/19 Check-In: 02/09/19 Checkout: 02/10/19 Check-In: 03/02/19 Checkout: 03/03/19 Please let me know if you need any additional information."

Handwritten notes found on a printed copy of this email in Chaudry's BSAO office track the credit card used for the stay, the vehicle for the occupants, and the number of beds in the room.

Between March 27, 2019 and December 23, 2019, Chaudry caused to be issued a total of 10 grand jury subpoenas for the telephone records of Victim #1 and 10 grand jury subpoenas for the telephone records of Victim #4.

On or about December 23, 2019, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #2 in New Jersey. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no

identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **Any and All subscriber information, billing information, and toll records (to include incoming and outgoing calls) * pertaining to incoming and outgoing numbers via text messages received and sent [Historical MMS) from November 15, 2019 thru December 23, 2019 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #4. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, the signature of the Grand Jury Foreperson, and the signature of the Clerk of Baltimore City Circuit Court.

On or about February 11, 2020, Covered Entity #2 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone.

On or about January 21, 2020, Chaudry caused to be issued a grand jury subpoena faxed from Maryland to Covered Entity #2 in New Jersey. The subpoena stated, "IN RE SPECIAL INVESTIGATION IN THE CIRCUIT COURT FOR BALTIMORE CITY," and contained no identifying case number. It stated, in relevant part, "YOU ARE HEREBY COMMANDED to produce the following documents or objects: **any and All subscriber information, billing information, and toll records (to include incoming and outgoing calls and text messages * pertaining to income and outgoing numbers via text messages received and sent [Historical MMS] from December 27, 2019 thru January 21, 2020 for the following telephone number: XXX.XXX.XXXX**," which represented the telephone number of Victim #5. The subpoena further stated, in relevant part, "The information sought in this subpoena is relevant and material to a legitimate law enforcement inquiry." It directed the records be produced "as soon as possible" directly to Chaudry at his BSAO address, and stated, "Any and all questions should be directed to him." The grand jury subpoena contained Chaudry's signature, the signature of the Grand Jury Foreperson, and the signature of the Clerk of Baltimore City Circuit Court.

On or about January 30, 2020, Covered Entity #2 electronically produced records pursuant to the above-referenced subpoena, which Chaudry subsequently accessed via an internet portal using his cell phone.

Between December 27, 2019 and February 18, 2020, including the January 21, 2020 grand jury subpoena referenced above, Chaudry caused to be issued a total of 4 grand jury subpoenas for the telephone records of Victim #1, three grand jury subpoenas for the telephone records of Victim #3, five grand jury subpoenas for the telephone records of Victim #4, and two grand jury subpoenas for the telephone records of Victim #5.

Beginning in or about April 2020, Chaudry began issuing trial subpoenas for the telephone records of Victims 1, 2, 3, and 4. On these subpoenas, in the blank for "Case No.," Chaudry inserted "IN RE SPECIAL INVESTIGATION." In the case caption, Chaudry inserted "IN RE SPECIAL INVESTIGATION" in the place for the Defendant. Chaudry checked the box marked "court proceeding" for where the subpoena recipient was required to appear, and "Grand Jury

Rev. August 2018

Room * Room 207 – 100 N. Calvert Street" as the location. Chaudry included the following text in the section for "Special Message:" "***Due to the COVID-19 crisis & in lieu of appearing before the Grand Jury for Baltimore City, the requested information may be sent via electronic mail to the attention of ASA Adam Lane Chaudry . . . ." The subpoenas further stated "NOTICE: 1. YOU ARE LIABLE FOR BODY ATTACHMENT AND/OR FINE FOR FAILURE TO OBEY THIS SUBPOENA." The trial subpoenas each contained a facsimile of the signature of the Clerk of Baltimore City Circuit Court.

Between April 21, 2020 and April 12, 2021, Chaudry issued a total of 23 Circuit Court subpoenas for the telephone records of Victims 1, 2, 3, and 4.

Using the phone records he obtained through subpoenas, Chaudry created a spreadsheet of 67 phone numbers found in the phone records of Victim #1. The spreadsheet referred to Victim #1 as "Control," and identified the number, associated name, and "relationship" to Victim #1. The spreadsheet also contained physical addresses and email addresses of some of the individuals associated with the phone, as well as other "associated persons" to the phone number. The spreadsheet contained record of personal calls of Victim #1, including a call to Victim #1's obstetrician/gynecologist. In the record, a call with Victim #3 is placed in larger bold-faced type. The spreadsheet also tracks the method of payment for hotel room stays in Victim #1's name.

After Victim #2 and Chaudry ended their relationship, and between on or about December 8, 2020 and December 21, 2020, Chaudry caused to be issued subpoenas for jail calls between Victim #2 and a close relative of Victim #2 who was incarcerated in another Maryland county in a case not involving BSAO. Chaudry also caused to be issued a subpoena for Victim #2's relative's visitor logs. Notes on those jail calls found in Chaudry's desk revealed sensitive information about Victim #2's family and banking information.

On or about February 24, 2021, Chaudry sent a letter on BSAO letterhead for 911 calls made by Victim #2 that appeared in phone record logs he had obtained. He represented that the records were "pertinent to a legitimate law enforcement inquiry."

On or about December 13, 2020, a second phone belonging to Chaudry captured 95 images of Victim #2's Instagram including lists of her contacts and photographs of Victim #2 and her friends and family.

In, total, between on or about January 3, 2019, and April 12, 2021, Chaudry caused to be issued a total of 33 grand jury and trial subpoenas for the telephone records of Victim #1.

Between on or about February 22, 2019, and April 12, 2021, Chaudry caused to be issued a total of 6 grand jury and trial subpoenas for the telephone records of Victim #2.

Between on or about March 12, 2019, and April, 21, 2020, Chaudry caused to be issued a total of 4 grand jury and trial subpoenas for the telephone records of Victim #3.

Between on or about March 22, 2019, and February 8, 2021, Chaudry caused to be issued a total of 20 grand jury and trial subpoenas for the telephone records of Victim #4.

Between on or about January 21, 2020 and February 18, 2020, Chaudry caused to be issued a total of 2 grand jury and trial subpoenas for the telephone records of Victim #5.

SO STIPULATED:

_Sean R. Delaney_
Sean R. Delaney
Assistant United States Attorney
Sarah R. David
Special Assistant United States Attorney

Adam Lane Chaudry
Defendant

Andrew C. White, Esq.
Patrick R. Seidel, Esq.
Counsel for Defendant

Rev. August 2018

