# EXHIBIT B




**Maryland State's Attorneys' Association**
3300 North Ridge Road, Suite 185
Ellicott City, Maryland 21043
410-203-9881
FAX 410-203-9891

Rich Gibson
President

Steven I. Kroll
Coordinator

March 23, 2023

The Honorable Richard D. Bennett (Ret.)
U.S. District Court for the District of Maryland
Edward A. Garmatz U.S. District Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

**RE:** ***United States v. Adam Chaudry,***
**In the U.S. District Court for the District of Maryland**
**Case No. 1:22-cr-00341-RDB**

Dear Judge Bennett (Ret.),

This letter is written on behalf of the Maryland State's Attorneys Association ("MSAA") regarding the above-listed disposition pending before Your Honor. The MSAA, along with all of its members, provides the following for Your Honor's consideration.

> *The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous...While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst.*[i]

The Office of the State's Attorney is created, with duties prescribed, under Article V of the Maryland Constitution. Upon taking office, the State's Attorney, along with the deputies and assistants take the following oath of office:

> I, . . . . . . . . . ., do swear, (or affirm, as the case may be,) that I will support the Constitution of the United States; and that I will be faithful and bear true allegiance to the State of Maryland, and support the Constitution and Laws

thereof; and that I will, to the best of my skill and judgment, diligently and faithfully, without partiality or prejudice, execute the office of ..........., according to the Constitution and Laws of this State.[ii]

Mr. Chaudry took this oath of office when he was hired as an Assistant State's Attorney. The framers of Maryland's Constitution placed such weight on this oath that they provided in the text of Maryland's Constitution that any person convicted for a violation of this oath prevents that person from ever holding an office of profit or trust in Maryland.[iii] This is because the framers knew that if one abuses a position of trust, the damage that could flow from such abuse would be immeasurable.

In using "the best skill and judgment" to "diligently and faithfully" "execute the office of [the State's Attorney]," as the oath prescribes, one must look to the standards for the conduct of a prosecutor. Regarding these standards, one former Justice of Maryland's Supreme Court has previously observed,

> [t]he standards by which to appraise the conduct of a State's Attorney are established by Maryland law. It is the duty of the prosecutor, as of every lawyer, to represent a client zealously within the bounds of the law. Because the power of the prosecutor to institute criminal prosecutions vests in him an authority in the administration of criminal justice at least as sweeping as, and perhaps greater than, the authority of the judge who presides in criminal cases, the responsibility of a public prosecutor differs from that of the usual advocate. His duty is to seek justice, not merely to convict. His obligation is to protect not only the public interest, but the innocent as well, and to safeguard the rights guaranteed to all persons, including those who may be guilty.[iv]

In addition, the Preamble to Maryland Attorneys' Rules of Professional Conduct, which prescribes attorney rules of ethics in Maryland, provides,

> An attorney's conduct should conform to the requirements of the law, both in professional service to clients and in the attorney's business and personal affairs. An attorney should use the law's procedures only for legitimate purposes and not to harass or intimidate others. An attorney should demonstrate respect for the legal system and for those who serve it, including judges, other attorneys and public officials. While it is an attorney's duty, when necessary, to challenge the rectitude of official action, it is also an attorney's duty to uphold legal process. In addition, an attorney should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority.[v]

The American Bar Association Standards also provide that prosecutors should not permit their judgment to be affected by the prosecutor's personal relationships,[vi] and that a "prosecutor should not use illegal or unethical means to obtain evidence or information, or employ, instruct, or encourage others to do so."[vii]

Although the words quoted above are simply words contained within case law, rule books, and ethical regulations, prosecutors around the State bring these words to life daily. They do this through their unwavering dedication to their responsibilities as public servants. To the good prosecutors who live by, practice and defend the "rule of law," these words are guideposts for their lives and careers to fulfill their duty to victims, defendants, the judiciary and the public. They take the tremendous responsibility of being a prosecutor seriously and live by their oath, as well as the laws and ethical responsibilities that guide them, which are necessary to carry out their mission of protecting the public.

One of the responsibilities of a prosecutor who takes the oath that Mr. Chaudry took is to investigate criminal activity, present evidence and have process issued by a grand jury. Grand jury investigations, by necessity, occur in secret and, because of this, prosecutors hold a heightened ethical responsibility to curtail abuse.[viii][ix] The underlying conduct that formed the basis of the charges against Mr. Chaudry was largely immune from oversight by the judiciary or others because of the secret nature of grand jury proceedings and the limited oversight permitted by the judiciary to interfere with investigations of the executive branch of government.[x]

Mr. Chaudry was a prosecutor in the Office of the State's Attorney for Baltimore City for approximately 12 years. He was assigned to the Homicide Division between September 2015 and June 2021. The allegations of this case involve not only the direct actions of Mr. Chaudry, but his conduct of enlisting unknowing employees of the Office of the State's Attorney for Baltimore City to assist him in his fraudulent conduct and causing the Grand Jury to unknowingly exceed its power to investigate crimes occurring in Baltimore City. The Grand Jury for Baltimore City unknowingly sanctioned an investigation of multiple innocent people based solely on the fraudulent and malicious conduct of Mr. Chaudry. To this, the U.S. Supreme Court has said,

> [a]s the U.S. Court of Appeals for the Third Circuit recognized, "the costs of continued unchecked prosecutorial misconduct" before the grand jury are particularly substantial because there "the prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny. * * * Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened."[xi]

Unfortunately, Mr. Chaudry's misconduct was replete with malice and personal motives. Although it is expected that several people will speak to Mr. Chaudry's outward facing reputation for competence, diligence and honesty, it is this outward mask of legitimacy that he wore that enabled him to gain his position of trust and effectuate in secret the abuses of that trust and the oath that he took. In this regard, his abuse of the public trust is analogous to the conduct of Baltimore's infamous Gun Trace Task Force in that he manipulated the system under the guise of legitimacy for his own personal gain at others expense.

The conduct for which Mr. Chaudry pleaded guilty undermines not only the Office of the State's Attorney for Baltimore City, but every prosecutor's office in the State of Maryland. It

will be impossible to measure the total damage that the abuse of the public trust which occurred in this case caused to the integrity and legitimacy of the criminal justice system in Maryland. That damage could easily take the form of a grand jury that refuses to return an indictment on a case, a petite jury that refuses to convict even after finding the prosecutor has met the standard to convict, a witness who is hesitant to come forward to testify, or a victim who is reluctant to report a crime. It also would likely cause the public to question the motives or legitimacy of a particular investigation undertaken by hardworking and honest prosecutors across Maryland. The integrity of the Office of the State's Attorney and, more broadly, the judiciary is what gives these institutions legitimacy in society. Mr. Chaudry's conduct acted to erode the integrity of these institutions and, therefore, also acted to erode their legitimacy.

It is often said that, "a prosecutor is not the representative of an ordinary party to a controversy 'but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all.'"[xii] Mr. Chaudry's conduct failed his sovereign client, his fellow prosecutors, the judiciary, and the citizens of Maryland.

Respectfully submitted,

Steven I. Kroll
MSAA, Executive Director

Cc: Rich Gibson, Jr.

---

[i] Robert Jackson, The Federal Prosecutor, Address to the Second Annual Conference of United States Attorneys (April 1, 1940), https://www.roberthjackson.org/speech-and-writing/the-federal-prosecutor/ (last visited 3/22/2023).
[ii] Md. Const. Art. I, § 9.
[iii] Md. Const. Art. I, § 11.
[iv] *Food Fair Stores, Inc. v. Joy*, 283 Md. 205, 224-225 (1978) (*quoting Sinclair v. State*, 27 Md. App. 207, 222-24 (1975)), J. Davidson dissenting (internal quotations omitted) (internal citations omitted).
[v] Rule 19-300.1(5) & (6), Preamble to the Maryland Attorneys' Rules of Professional Conduct.
[vi] Criminal Justice Standards for the Prosecution Function, Fourth Edition (2017), Standard 3-1.7 Conflicts of Interest, American Bar Association. Standards for the Prosecution Function (americanbar.org) (last visited March 23, 2023).
[vii] Criminal Justice Standards for the Prosecution Function, Fourth Edition (2017), Standard 3-4.1 Investigative Function of the Prosecutor, American Bar Association. Standards for the Prosecution Function (americanbar.org) (last visited March 23, 2023).

[viii] *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19; *In re Criminal Investigation No. 437*, 316 Md. 66, 557 A.2d 235 (1989).

[ix] *United States v. Williams*, 504 U.S. 36, 62-63 (1992) (*quoting United States v. Serubo*, 604 F.2d 807, 817 (3rd Cir. 1979)).

[x] *See In re Criminal Investigation No. 13*, 82 Md. App. 609 (1990) (noting that separation of powers limits the judiciary's role in overseeing investigations by prosecutors).

[xi] *United States v. Williams*, 504 U.S. 36, 62-63 (1992) (*quoting United States* v. *Serubo*, 604 F.2d 807, 817 (1979)).

[xii] *Hill v. State*, 355 Md. 206, 224, 734 A.2d 199, 209 (1999) (*quoting Berger v. United States*, 295 U.S. 78, 88-89 (1935)).